CECIL MILLER, Respondent, v. KANSAS CITY WESTERN RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, June 1, 1914.

1. NEGLIGENCE: Railroads: Jurisdiction: Court of Appeals: Constitution of Another State. Where the law of another state, made the foundation of an action in this State, is attacked as invalid because contrary to the constitution of that other state, the Court of Appeals has jurisdiction of the appeal. The Courts of Appeals are only forbidden to construe the constitutions of the United States and of this State; not that of any other state.

2. ———: Validity of Federal Statute: Constitution. Courts of Appeals have not jurisdiction of appeals in cases involving the validity of a Federal statute; but they have jurisdiction to, and constantly do, construe such statutes.

3. ———: Federal Statute: State Law: Remedy: State Court. The Federal Employer's Liability Act supercedes the State law in all instances, where the injury happens to an employee while engaged in interstate service or labor, and the remedy is exclusively under that act though it may be had in a state court.

4. ———: Interstate Commerce: Interstate Labor: Personal Injury. An electric railway operated an interstate road between Kansas and Missouri and also on part of the same line a local car between points in Kansas. A conductor of a local

electric car was in duty bound at the proper siding, to take such siding and let any interstate car going in the same direction pass him. The local car stopped at a station to let a passenger off and while the conductor was engaged in assisting him off, an interstate car following crashed into the rear of the local car and injured the conductor. It was *held*, that the conductor was not engaged in interstate service.

5. ————: Federal Employer's Liability Act: Particular Service. The Federal Employer's Liability Act was intended to be confined to injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce. And when such service is upon a particular car that car must be in that service.

6. ————: ————: ————. The facts that while it is the duty of a conductor of a local car to get out of the way of an interstate car at proper sidings, and he fails to do so; and while engaged in letting off a passenger from his car at a station the interstate car negligently runs into the rear of his car and injures him, do not show the conductor to be employed in interstate service.

7. STATUTE OF KANSAS: Penal Statute. The Statute of Kansas on the Liability of Corporations for injuries to employees is not a penal statute; especially in any such sense as would prevent the courts of Missouri in entertaining suits founded on such statute.

8. INSTRUCTIONS: Proof. An instruction which permits the jury to find damages for personal injuries in the total sum of $25,000 claimed by the plaintiff's petition, when $200 of that sum is for medical attendance and there was proof of only $15 of the latter claim being expended, is erroneous, even though the verdict is for $5000, and a remittitur should be entered.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson*, Judge.

AFFIRMED (*conditionally*).

*C. F. Hutchings, McCabe Moore* and *Glen R. Donaldson* for appellant.

*Atwood & Hill* for respondent.

ELLISON, P. J.—Plaintiff was an employee of defendant, a railway operated by electricity, as a conductor on one of its local cars in the State of Kansas

and while engaged in that service was injured in a collision caused by one of defendants' other cars running into the rear of the car which plaintiff was conducting. Plaintiff's petition pleads the Kansas statute and founds hs action thereon. He recovered judgment in the trial court.

The record shows that defendant roadway is an electric line running from Leavenworth in the State of Kansas to Kansas City in the same State and that its cars run through Kansas City, Kansas, over into Missouri, looping at Tenth and Main street and returning to the State of Kansas. We held in McAdow against this defendant (not yet reported) that cars carrying passengers to and from Kansas City, Missouri to Leavenworth, Kansas were engaged in interstate commerce, notwithstanding the cars were operated in Kansas City, Missouri over the tracks of the Metropolitan Street Railway. In this case defendant, though disputing it in the McAdow case, conceded it is engaged in interstate commerce between the two cities of Leavenworth, Kansas and Kansas City, Missouri; that fact, indeed, now being one of its principal points of defense.

But the record further shows that the car conducted by plaintiff at the time he was injured, was operated locally as a "stub," wholly in Kansas; that is to say, it ran from Leavenworth to Richardson and return, both places being in Leavenworth county, Kansas, and the round trip requiring about eighty minutes. Thus these cars used the tracks jointly between Leavenworth and Richardson.

The evidence showed that the stations or stops, on the "stub line" were Richardson, Soldiers Home, Santa Fe Crossing, Blackbridge and Leavenworth. On the day of the accident, plaintiff's car was on the way to Leavenworth. It was his duty to stand out on a switch, or another track, at proper time, to let the car operated over the whole line which might overtake him

pass by. When at the Santa Fe Crossing, he looked back and saw the other car coming, but he had then passed the point where he could switch out, or cross over out of the way. He ran on to Blackbridge and just as he stopped there to let a passenger off, the other car crashed into the rear of his car, killing one person and injuring the plaintiff. His car was in plain view of the motorman of the interstate car for a long distance and that the latter was guilty of gross negligence in running into the standing car was clearly made out by the evidence.

Defendant questions the jurisdiction of this court on the ground that the Kansas statute, under which, as we have stated, the action is brought, is contrary to the Constitution of Kansas (what part of such constitution is not stated) and void, "that the laws or statutes of the State of Kansas, upon which plaintiff is basing his action, are void and unconstitutional in the State of Kansas, and consequently in the State of Missouri." And second that whatever action plaintiff has is under the Federal Employer's Liability Statute which, defendant says, must be brought in the Federal court. The words of these objections as made at different times, in the trial are not alike, but their meaning is expressed in that we have just quoted. The words of the objection as stated in this court are, for "the reason that one of the questions involved herein is the constitutionality of an Act of the State of Kansas, which was sought to be applied as the law in the State of Missouri; and for a second and further reason that there is a Federal question involved, because: First. Plaintiff's action is founded upon Chapter 2239 of the law of the State of Kansas, 1911, which said law is unconstitutional and void and cannot be enforced in the courts of the State of Missouri. Second. Because the plaintiff's action herein accrued under the provisions of the Federal law known as the Federal Employer's Liability Act, same being the Act approved on

April 22, 1908, found in 35 Statutes at Large, page 65 (1909, Supplement Federal Statutes Annotated, page 584), as amended by 1912 Supplement Federal Statutes Annotated, page 335, and coming within the provisions thereof, this action could only be brought under said Federal statutes and cannot be maintained under the Kansas statute.''

The fact that the validity of the Kansas statute under the Constitution of Kansas, is said to be involved in this case, does not affect the jurisdiction of the Courts of Appeals. There is nothing to prevent a Court of Appeals from passing on the validity of a statute of another state. We are only forbidden to construe the Constitution of the United States and of this State. But not of any other State.

Defendant states that its attention having been called to the fact that the United States Supreme Court has held the amendment to the Federal statute permitting actions under the Federal Act to be brought in State courts to be constitutional, it withdraws the second point. However, we may add that points of *construction* of a Federal statute are within the jurisdiction of the Courts of Appeals and are being constantly decided.

Much of defendant's effort seems to be to show that the casualty happening at the collision of these cars, falls under the Federal Employer's Liability Act, for the reason that plaintiff was engaged in interstate commerce, and that therefore the action must be based on that act and not on the statute of Kansas. If it were true that the casualty was of such nature as brought it within the terms of the Federal statute, the remedy under that statute would be exclusive, for that law supercedes the State statutes. [Second Employer's Liability Cases, 223 U. S. 1.]

In order that plaintiff's action may come under the Federal statute he must have been engaged at the time of his injury, in labor connected with interstate

commerce, and we do not think the evidence shows he was. He was merely conducting a local car between points in Kansas, and not even remotely connected with interstate commerce. In the Walsh case of the Second Employer's Liability Cases, 223 U. S. 1, 6, Walsh when hurt was employed by an interstate carrier in replacing a draw bar on an *interstate car*. In C., R. I. & Pac. Ry. v. Brown, 229 U. S. 317, the employee was engaged in local yards, but his labor was in uncoupling and switching cars used in interstate commerce. And to the same effect was the case in the St. Louis Court of Appeals of Rich v. St. L., & S. F. Ry., 166 Mo. App. 375. In Pederson v. Delaware, L. & W. Ry., 229 U. S. 146, the employee was injured in carrying bolts to be placed in a bridge used for both inter and intrastate commerce.

We have had recently in this court cases involving the question when one was or was not engaged in interstate commerce labor; which are not yet reported, and in each of them held the service to be interstate commerce. In Hardwicke v. Wabash Ry. Co., the employee was killed while sweeping snow from a switch leading from the train track over which trains engaged in interstate commerce and intrastate commerce made daily runs. In McAdow against this defendant, a motorman operated one of defendant's cars from Leavenworth to Kansas City, Kansas and then operated it over the street railway into Missouri and back into Kansas to Leavenworth.

In Moliter v Wabash Ry. Co., the employee was engaged in switching cars loaded with interstate freight out of a train with cars filled with freight for points both within and without the State.

But in all of these cases the work of the employee, unlike the case at bar, was connected with and was a part of interstate service. If the work of a local employee is on, or with, a particular car that car must

be an interstate car in order that such employee may be engaged in interstate service.

We have already stated that it was plaintiff's duty to place his car on a switch so as to let an interstate car overtaking him, pass on. Upon that foundation defendant lays its claim that plaintiff was employed in interstate service. Defendant says his duty was to keep a clear track for the interstate car and that that was his service; and therefore he was engaged in interstate service. We think this would be stretching out such service to unreasonable length and the statute to unreasonable bounds. It could as well be said that any local employee walking upon the track who should get off when a train approached was engaged in such service. Besides, whatever was plaintiff's duty in relation to the interstate car, he was not engaged in the performance of such duty when hurt, and therefore did not fall within the terms of the statute, nor the decisions thereon. His act in stopping his car to let off passengers was an act or a labor for defendant's local service only. "It is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce." [Illinois Cen. R. R. Co. v. Behrens (S. C. U. S. April 27, 1914, not yet reported.)]

The statute of Kansas was introduced in evidence. Objection was made that it was a penal statute and therefore could not be the foundation of an action in this State. We do not see any justification for designating the statute as penal. Speaking in general terms, it gives a right of action in damages to an employee for an injury suffered by him from the negligence in whole or in part of the carriers servants, and in case of his death, the action is given to the widow and children, or mother or father. It provides that contributory negligence of the injured party shall not necessarily defeat his action, but shall only diminish the

damages; and that such employee shall not be held to have assumed the risk.

That the eivdence given in plaintiff's behalf made out a case for the jury under the Kansas statute (which is substantially like the Federal Act) there can be no doubt and but for the following consideration we would feel bound to affirm the judgment *in toto*.

Plaintiff alleged in his petition that his total damages were $25,000. A part of these damages was $200 for "medicines, nursing and medical attendance." He only asked one instruction and that was on the measure of damages, which contained the following concluding clause: that the jury "shall assess plaintiff's damages at such sum as in the judgment of the jury, under all the evidence in the case, will compensate him for the injuries received, not, however, exceeding the sum of twenty-five thousand dollars." That allowed him to recover $25,000 for his injuries only. Whereas he only asked $24,800 for injuries; the remaining $200 of the total sum asked being for medicines, etc. After having recited these different results flowing from the collision, the petition concludes, "All to plaintiff's damage in the sum of twenty-five thousand dollars. Wherefore, he demands judgment against defendant for the sum of twenty-five thousand dollars." The evidence of his expenditures showed an outlay of fifteen dollars instead of the $200 alleged. From this it appears from the petition and the evidence that plaintiff should not have been allowed in excess of fifteen dollars in addition to the $24,800; which would make a total of $24,815. Yet, as the verdict was for only $5000, it may be said the faulty instruction was not reversible error. But, aside from this, we think the most reasonable view to take of it is that the instruction is so worded as to allow the jury to consider the entire $200 claimed for medical service when only fifteen dollars was proven. The instruction reads that the jury may allow such damages "under *all* the evidence in the case," as will

compensate plaintiff for the injuries received not exceeding $25,000. This, in effect, told the jury they might allow the full $25,000 claimed, for it took·that sum to make up the $25,000 asked. The jury could well conclude that the $200 was a part of plaintiff's injuries; and, considering the evidence and the peculiar wording of the instruction, doubtless did so understand it. "The instruction must be within the purview of both the pleading and evidence." [Degonia v. Ry. Co., 224 Mo. 564, 589; Smart v. Wabash Ry. Co., 164 Mo. App. 61.]

We cannot allow the fifteen dollars proven, for to do so would be to say that it was established as a matter of law.

The judgment will be affirmed if plaintiff will within fifteen days enter a remittitur of $200, otherwise it will be reversed and the cause remanded. Costs of the appeal taxed against the plaintiff. All concur.