Argued March 9, reversed March 23, 1915.

# KAMBORIS *v.* OREGON-WASHINGTON R. & N. CO.*

(146 Pac. 1097.)

**Commerce—"Interstate Commerce"—Federal Employers' Liability Act.**

1. An employee unloading into pockets, in part for interstate trains, coal in cars switched on a track for unloading is, while unloading and waiting for arrival of cars to block the wheels before unloading, engaged in "interstate commerce" within the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65, as amended by Act April 5, 1910, c. 143, 36 Stat. 291 [U. S. Comp. Stats. 1913, §§ 8657–8665.])

**Commerce—Regulation of Employment—Federal Employers' Liability Act.**

2. The Federal Employers' Liability Act supersedes the state laws on the same subject, and actions within such act must be prosecuted thereunder.

**Courts—Jurisdiction—Actions Under Federal Employers' Liability Act.**

3. Cases arising under Federal Employers' Liability Act may be brought in the state courts of competent jurisdiction.

---

*Upon the constitutionality, application and effect of the Federal Employers' Liability Act, see notes in 47 L. R. A. (N. S.) 38, and L. R. A. 1915C, 47.        REPORTER.

Pleading—Objections—Variance.

4.   Where the complaint in an action for the death of a railroad employee did not show that the railroad company or decedent was engaged in interstate commerce, or that decedent left a widow, children or other beneficiary, mentioned in the Federal Employers' Liability Act, and no application was made to change the pleading, an objection by the railroad company, that the action was under federal statute made on the proof disclosing that fact, was in time, and the court could not permit a recovery under the state statute.

From Multnomah: HENRY E. McGINN, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is an action by Pete Kamboris, as administrator, against the Oregon-Washington Railroad & Navigation Company, a corporation, to recover damages sustained by the estate of Saranti Tsepeila, also known as "Saratan George," by the negligence of the defendant. The cause was tried to the court and jury, and a verdict for $3,000 rendered. From the following judgment the defendant appeals.

The decedent, who was a resident of the City of Portland, was employed by the defendant at Umatilla, Oregon, as a common laborer, at which town the defendant maintains a coal-chute about 35 feet in height, 60 feet in length, and 24 feet in width, elevated upon a wooden trestle about 25 feet from the ground. An elevated railway track is joined with the switch track by an incline wooden trestle about 8 feet wide and 350 feet long, extending lengthwise through the center of the coal-chute. Cars are switched into the chute by way of this incline and unloaded into pockets or reservoirs. The deceased was employed shoveling coal in the unloading of these cars. At the time of the injury which caused his immediate death, he was stationed at the top of the incline at the entrance of the chute waiting for the carloads of coal to be switched into it, and upon their arrival was instructed to block the wheels of

the cars. While thus waiting to perform this duty according to the instructions of the foreman in charge of the chute, he was killed by the derailment of a coal-car due to a broken and defective rail, which the evidence tended to show was due to the negligence of the defendant.

The Oregon-Washington Railroad & Navigation Company is a common carrier by railroad engaged in interstate commerce between the State of Oregon and other states. From July 4, 1913, to November 17th of the same year, the decedent had been continuously employed by the defendant company to shovel coal as above mentioned. The coal was placed in the pockets of the chute to be available for coaling engines. It was then emptied by other employees into the tenders of some 20 or 25 engines and used to create power to pull freight and passenger trains from Umatilla, Oregon, to Walla Walla, Washington, Spokane, Washington, and other points outside the State of Oregon. The deceased left a wife surviving him, Kyriukoula Tsepeila, by name, a resident of the Island of Lemnos, Greece. Pete Kamboris was the duly appointed, qualified and acting administrator of the decedent's estate, and prosecutes this action to recover the damages to the estate under Section 380, L. O. L.

At the close of the plaintiff's case, counsel for defendant moved the court for a nonsuit, for the reason that the action could not be maintained under the above-named section of the Code, and that the evidence shows conclusively that the decedent, Saratan George, at the time of his death, was employed by the defendant company; a common carrier by railroad and engaged in interstate commerce, and that the decedent was employed by it in such commerce at the time he received the injury. The court denied the motion. At

the close of the case defendant renewed the motion for a nonsuit and requested a directed verdict, which was denied.                                    REVERSED.

For appellant there was a brief over the names of *Mr. Charles E. Cochran, Mr. William W. Cotton* and *Mr. Arthur C. Spencer,* with an oral argument by *Mr. Cochran.*

For respondent there was a brief over the name of *Messrs. Schmitt & Schmitt,* with an oral argument by *Mr. G. G. Schmitt.*

MR. JUSTICE BEAN delivered the opinion of the court.

The main question for determination upon this appeal is whether or not the deceased was engaged in interstate commerce at the time of the injury. It is conceded that the defendant was a common carrier by railroad and engaged in interstate commerce at the time. There is no controversy as to the facts relating to the employment of the deceased. It is the contention of the defendant that the general employment of the decedent at the particular time he received the injury had a substantial relation to interstate commerce, and that the action should be tried under the Federal Employers' Liability Act (35 U. S. Stat. 65, c. 149, and the amendment of April 5, 1910, 36 U. S. Stat. 291, c. 143). The act so far deemed material to the issues herein is as follows:

"That every common carrier by railroad while engaging in commerce between any of the several states * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such

employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.''

Under the terms of the statute, a right of recovery arises only where the injury is suffered while the carrier by railroad is engaged in interstate commerce and while the employee is employed by such carrier in such commerce: *Illinois Cent. R. R. Co.* v. *Behrens*, 233 U. S. 473 (58 L. Ed. 1051, 34 Sup. Ct. Rep. 646, Ann. Cas. 1914C, 163) ; *Miller* v. *Kansas City Western Ry. Co.*, 180 Mo. App. 371 (168 S. W. 336). The learned counsel for plaintiff do not take issue with this proposition of law last stated, but contend that the act of putting coal into the chute was too remote, did not constitute an act in the assistance of interstate traffic, nor facilitate the movements thereof; that, if the deceased had been engaged in taking coal out of the chute into engine tenders, he would have been engaged in interstate commerce.

In *Horton* v. *Oregon-W. R. & N. Co.*, 72 Wash. 503 (130 Pac. 897, 47 L. R. A. (N. S.) 8), it was held that one employed to operate a pumping plant used indiscriminately by a railroad company in interstate and intrastate commerce, for the purpose of supplying water to locomotives, is within the purview of the Federal Employers' Liability Act. In this case it appeared that the decedent lived two or three miles from the pumping plant to which it was necessary for him to go daily; that for this purpose defendant furnished him with a small handcar or ''speeder''; and that while going from his home to the plant, while operating the

speeder on the defendant's track, decedent was over-
taken and struck by an interstate passenger train.   In
*Louisville & Nashville R. Co.* v. *Melton,* 218 U. S. 36,
48 (54 L. Ed. 921, 30 Sup. Ct. Rep. 676, 678), the court
said:

"A railroad cannot be run without bridges. * *
Coal-tipples are no less essential to the operation of a
railroad than bridges, because the engines cannot be
operated without coal.   The construction of a coal-
tipple is therefore essential to the operating of a rail-
road."

In the case of *Zikos* v. *Oregon R. & N. Co.* (C. C.),
179 Fed. 893, the plaintiff was engaged in repairing a
track used incidentally in both classes of traffic.   It
was held that his employment came within the law.   At
page 898 of the opinion the court said:

"But where the employment necessarily and directly
contributes to the more extended use and without
which interstate traffic could not be carried on at all,
no reason appears for denying the power over the one,
although it may indirectly contribute to the other."

In *Montgomery* v. *Southern Pacific Co.,* 64 Or. 597
(131 Pac. 507, 47 L. R. A. (N. S.) 13), a member of a
switching crew was engaged in moving oil for the pur-
pose of providing fuel for the engines used in trans-
mitting freight and passengers from California into
Oregon.   The oil was to be used principally for the
engine and the crew with which plaintiff was engaged
in his general work of switching interstate cars, spot-
ting, setting out, and moving them from station to
station.   This court held that the plaintiff was engaged
in interstate commerce within the meaning of the Fed-
eral Employers' Liability Act.   In *Pedersen* v. *Dela-
ware Lack. & West. R. R. Co.,* 229 U. S. 146 (57 L. Ed.
1125, 33 Sup. Ct. Rep. 648, Ann. Cas. 1914C, 153), an

employee carrying bolts to be used in repairing a bridge which was an instrumentality of interstate commerce was held to be an operation coming under the act. In *Central R. Co. of New Jersey* v. *Colasurdo,* 192 Fed. 901 (113 C. C. A. 379), the same was held in regard to a track-walker repairing a switch on an interstate road over which interstate freight and traffic moved.

In the case at bar we cannot see why the act of furnishing the coal for fuel, and placing the same in the pockets of the chute to be used partly in the engines engaged in interstate traffic, was not just as essential in the matter of running interstate trains as the act of taking the same out of such chute or pockets and placing it upon the tenders of the engines, or any other act of the employees in running the engines and trains transporting such commodities. If it were impossible to fill the position of the deceased, and the coal was not furnished, interstate commerce would stop or be retarded to that extent, and it clearly seems to us that the general duties of the decedent, as well as the act he was performing at the particular time of the injury, had a very substantial bearing upon and relation to interstate commerce. It cannot be said consistently that the decedent was not engaged in his duty because he was waiting for the cars to approach the proper place in order to block the wheels. It might as well be said that a switchman was not engaged in his duty while waiting for a train to pass a switch in order to turn the same. The act of placing the cars of coal in the chute was similar to decedent's general duties of shoveling coal, and was a necessary service in preparing the fuel for the engines hauling the interstate trains. The case in this respect is like *Montgomery* v. *S. P.*

*Co.,* 64 Or. 597 (131 Pac. 507, 47 L. R. A. (N. S.) 13),
where we considered and discussed this question as
carefully as we could; and *Horton* v. *Oregon W. R. &
N. Co.,* 72 Wash. 503 (130 Pac. 897, 47 L. R. A. (N. S.)
8). From the practically admitted facts in the case
at bar we conclude. the defendant was engaged in
interstate commerce at the time of the injury, and
that the decedent was employed by the defendant in
such commerce, and was within the protection of the
act in question.

2. The case being one under the Federal Employers'
Liability Act, that law is supreme and exclusive and
supersedes the laws of the state; therefore the action
should be prosecuted under the federal statute: *Ober-
lin* v. *Oregon-W. R. & N. Co.,* 71 Or. 177 (142 Pac. 554) ;
*Mondou* v. *New York, N. H. & H. Co.,* 223 U. S. 1 (56
L. Ed. 327, 32 Sup. Ct. Rep. 169, 38 L. R. A. (N. S.)
44; *Am. R. R. Co.* v. *Didricksen,* 227 U. S. 145 (57 L.
Ed. 456, 33 Sup. Ct. Rep. 224) ; *Michigan Cent. R. Co.,*
v. *Vreeland,* 227 U. S. 59, 67, 68 (57 L. Ed. 417, 33
Sup. Ct. Rep. 192, Ann. Cas. 1914C, 176) ; *Gulf etc. Ry.
Co.* v. *McGinnis,* 228 U. S. 173, 175 (57 L. Ed. 785, 33
Sup. Ct. Rep. 426). In *Seaboard Air Line Ry.* v. *Hor-
ton,* 233 U. S. 492, at page 501, 34 Sup. Ct. Rep. 635,
at page 638 (58 L. Ed. 1062, Ann. Cas. 1915B, 475,
L. R. A. 1915C, 1), we find the following:

"But it is settled that since Congress, by the act of
1908, took possession of the field of the employer's
liability to employees in interstate transportation by
rail, all state laws upon the subject are superseded"—
citing the Mondou case.

3. It is also well settled that cases arising under the
federal act may be brought in state courts of competent
jurisdiction: *Mondou* v. *New York, N. H. & H. R. R.*

*Co.,* 223 U. S., at pages 55 and 56 (56 L. Ed. 327, 32 Sup. Ct. Rep. 169, 38 L. R. A. (N. S.) 44.)

4. In the instant case there was no allegation in the complaint that the defendant company or the deceased employee were engaged in interstate commerce; neither did that pleading show that the decedent left a widow, children, or other beneficiary mentioned in the federal statute. No application was made to change the pleading. Where the complaint alleges a cause of action under state statutes and the proof shows a cause of action under federal statutes, the situation is described in the similar case of *St. Louis, S. F. & Texas Ry.* v. *Seale,* 229 U. S. 156, 161 (57 L. Ed. 1129, 33 Sup. Ct. Rep. 651, 653, Ann. Cas. 1914C, 156), as follows:

"When the evidence was adduced, it developed that the real case was not controlled by the state statutes but by the federal statute—in short, the case pleaded was not proved, and the case proved was not pleaded. In that situation the defendant interposed the objection, grounded on the federal statute, that the plaintiffs were not entitled to recover on the case proved. We think the objection was interposed in due time and that the state courts erred in overruling it."

Section 380, L. O. L., under which the action is brought, authorizes an administrator to maintain an action against a wrongdoer if the decedent would have possessed the right of action had he lived. The amount recovered is the property of the estate and should be administered as other personal property of the deceased person. Under the federal law, the administrator acts in the capacity of a trustee and brings the action for the benefit of the persons therein named.

Several other errors are assigned, but, in view of our conclusion as to the law governing the case, we do not deem it necessary to consider them.

The judgment of the lower court is therefore reversed, and the cause remanded for such further proceedings as may be deemed proper, not inconsistent herewith.                                    REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE HARRIS concur.